628 F.2d 142
 202 U.S.App.D.C. 142, 205 U.S.P.Q. 873,
1980-2 Trade Cases 63,298
 ROBINTECH, INC., a Delaware Corporation
v.
CHEMIDUS WAVIN, LIMITED, a British Corporation, Appellant.
ROBINTECH, INC., a Delaware Corporation, Appellant,
v.
CHEMIDUS WAVIN, LIMITED, a British Corporation.
 Nos. 78-1906, 78-1909.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 12, 1979.
Decided April 11, 1980.
 
 Appeals from the United States District Court for the District of Columbia (D.C. Civil Action No. 76-613).
 Laurence R. Brown, Washington, D. C., and A. Robert Theibault, Arlington, Va., for Chemidus Wavin, Ltd., appellant in No. 78-1906 and cross-appellee in No. 78-1909.
 David S. Abrams, Washington, D. C., with whom Alfred N. Goodman and Mark S. Bicks, Washington, D. C., were on the brief, for Robintech, Inc., appellee in No. 78-1906 and cross-appellant in No. 78-1909.
 Before LEVENTHAL* and WALD, Circuit Judges, and NICHOLS,** Judge for the United States Court of Claims.
 Opinion for the Court filed by Judge NICHOLS.
 Concurring opinion filed by Circuit Judge WALD.
 NICHOLS, Judge:
 
 
 1
 This appeal brings for review the final judgment in a declaratory judgment action brought under 28 U.S.C. §§ 2201, 2202 by plaintiff Robintech, Inc. (hereinafter "Robintech") and counterclaim by defendant Chemidus Wavin, Ltd. (hereinafter "Chemidus"), wherein, following a nonjury trial and due deliberation, the United States District Court for the District of Columbia held defendant's U.S. Patent No. 3,484,900 (hereinafter "Sands-Broome patent") invalid and misused. Robintech, Inc. v. Chemidus Wavin, Ltd., 450 F.Supp. 823 (1978). The conclusion of invalidity was based on a finding of "obviousness" under 35 U.S.C. § 103. Robintech, Inc., supra at 834. The conclusion of misuse was based on the court's finding that clause 1(d) of the licensing agreement to which the Sands-Broome patent was subject, extended Chemidus' patent monopoly on an "apparatus and method" beyond its lawful scope in an attempt to control the distribution of unpatented pipe products of this method. Ibid. Consequently, the District Court denied Chemidus' counterclaim for patent royalties. Robintech, Inc., at 834. For procedural reasons, the District Court declined to determine whether a removal of clause 1(d) would purge misuse. Memorandum Order of July 5, 1978, Joint Appendix, Vol. A at 158.
 
 
 2
 The District Court also concluded as a matter of law that the delivery of certain technical information or "know-how" by Chemidus to Robintech would not purge a finding of misuse. Finally, the District Court denied Robintech's claim for damages for Chemidus' alleged failure to deliver the know-how, basing its denial upon Robintech's failure to show that it had paid Chemidus those royalties due it in return for the know-how. Ibid. at 835.
 
 
 3
 After careful consideration, we reach the following conclusions:
 
 
 4
 I. The District Court's finding of invalidity under 35 U.S.C. § 103 is affirmed.
 
 
 5
 II. The District Court committed no procedural error in determining patent misuse.
 
 
 6
 III. Whether removal of the offending clause from the license agreement purges the misuse, is a moot issue.
 
 
 7
 IV. The decision on patent misuse is correct on the merits.
 
 
 8
 V. The District Court's finding that the delivery of know-how by Chemidus to Robintech could not have purged misuse is affirmed.
 
 
 9
 VI. However, we remand to the District Court on the issue of compliance with the know-how provision (1(b)) of the license agreement for further deliberation in accordance with this opinion.
 
 
 10
 On December 23, 1969, the United States Patent Office issued Patent No. 3,484,900 in the name of David Harold Sands and Ronald Broome as joint inventors. The Sands-Broome patent covers an "apparatus and method" for forming a circumferential internal groove in a length of piping of tubular thermoplastic material. As we develop fully infra, the resulting pipe and pipe fittings are not themselves covered by the patent.
 
 
 11
 The Sands-Broome patent is assigned to Chemidus and is subject to a license agreement entered into on January 1, 1970, between Chemidus Plastics, Ltd. and Universal Pipe & Plastics, Inc., predecessors in interest of defendant and plaintiff, respectively. In general, the agreement provides that Chemidus shall grant to Universal "full but non-exclusive authority" to manufacture and market pipe and pipe fittings made by use of Chemidus' patents and related know-how, in return for which Universal agrees to pay fixed sums and royalties to Chemidus and to undertake various other duties in the way of sales promotion, quality control, patent defense and confidential treatment. More specifically, the license agreement provides under clause 1(b) that Chemidus would deliver certain know-how to the licensee:
 
 
 12
 Chemidus shall furnish to the Licensee within thirty days of receipt by Chemidus of the first payment hereinafter provided for all such information and technical knowledge as shall reasonably be necessary and desirable to enable the Licensee to make use of the know-how for the manufacture of the products in the territory.
 
 
 13
 Furthermore, clause 1(d) of the license agreement limits Robintech's ability to export the unpatented products, i. e., pipes and pipe fittings, of the patented method:
 
 
 14
 The Licensee shall be entitled to export the products outside the territory to any part of the world except Great Britain and any country in respect of which Chemidus shall have granted to any other party a license to manufacture the products. Chemidus shall from time to time advise the Licensee in writing of such countries in respect of which licenses and such notification shall be conclusive and binding upon Chemidus and the Licensee.
 
 
 15
 (The term "territory" is defined in clause 1(a) as being the United States and Puerto Rico). The "products" are those made with use of the patented invention.
 
 
 16
 During trial, Chemidus filed and served a motion to strike Robintech's claim that clause 1(d) and other clauses of the license agreement constituted patent misuse. Approximately two months following trial, the District Court issued a Memorandum Order on March 22, 1978. The District Court concluded that the export limitation in clause 1(d) of the license agreement constituted patent misuse, barring recovery. This Memorandum Order was incorporated in part into the District Court's full opinion in which it issued its Findings of Fact and Conclusions of Law. Robintech, Inc., supra at 834.
 
 
 17
 A discussion of each issue follows.
 
 
 18
 I. WHETHER CLAIMS 3-6 OF THE SANDS-BROOME PATENT WERE
 
 
 19
 CORRECTLY HELD INVALID BY THE DISTRICT COURT UNDER
 
 
 20
 35 U.S.C. § 103.
 
 
 21
 In Robintech, Inc. v. Chemidus Wavin, Ltd., supra at 834, the District Court concluded, as a matter of law, that claims 3-6 of the Sands-Broome patent were invalid for "obviousness" under 35 U.S.C. § 103. Chemidus also relied on claims 7 and 10 below, and these two were held invalid, but the appeal is apparently limited to 3-6. For the reasons set forth in that opinion, which we adopt as ours, we affirm the District Court's conclusion of patent invalidity. Chemidus attacks the District Judge's reliance on absence of synergism, urging that synergism has been criticized as a test of validity of a combination patent. The Supreme Court, however, uses it in the recent case, Sakraida v. Ag Pro, Inc., 425 U.S. 273, 282, 96 S.Ct. 1532, 1537, 47 L.Ed.2d 784 (1976), which the District Judge relies on. He shows so much else in support of his decision, in his findings of fact and conclusions of law, that we could treat the synergism test as irrelevant and reach the same result.
 
 
 22
 II. WHETHER THE DISTRICT COURT, COMMITTED PROCEDURAL ERROR
 
 
 23
 IN TREATING CHEMIDUS' MOTION TO STRIKE THE MISUSE
 
 CLAIM AS A MOTION FOR PARTIAL JUDGMENT
 
 24
 UNDER RULE 54(b).
 
 
 25
 Chemidus argues that the District Court committed procedural error in treating Chemidus' motion to strike Robintech's patent misuse claim as a motion for partial judgment on the misuse issue under Rule 54(b). Chemidus submits that partial judgment on this claim was procedurally improper because Chemidus never had its day in court on this issue. Because the trial judge insisted upon deciding the misuse issue on his own suggestion as a matter of summary judgment after Chemidus made only a motion to strike, Chemidus claims it never got a fair chance to present full evidence on the merits on the misuse issue. Moreover, Chemidus argues that at trial, the judge opposed its development of defenses against the misuse claim.
 
 
 26
 In addition, Chemidus argues that partial judgment was procedurally defective because its motion to strike was submitted only to show that Robintech had not exercised its burden of proof on the misuse issue. Neither party, says Chemidus, asked the trial judge to consider the misuse issue as a matter of summary judgment. Chemidus states that under Fed.R.Civ.P. 56, a trial judge must ascertain what material facts are not in controversy or conflict when he decides an issue on summary judgment. This, says Chemidus, the trial judge failed to do.
 
 
 27
 After thorough consideration of Chemidus' claim that the District Court erred procedurally by treating Chemidus' motion to strike as a motion for partial judgment, we deny Chemidus' claim.
 
 
 28
 As to Chemidus' first argument that it never had its "day in court" on the misuse issue, our perusal of the pre-trial documents and trial transcript compels us to conclude that Chemidus did, indeed, have a chance to submit evidence on the misuse before the District Judge made his decision: (1) whether clause 1(d) of the license agreement constituted patent misuse first surfaced as an issue before the District Court in the Pre-Trial Order of November 30, 1977; thus, under Fed.R.Civ.P. 16, the issue of patent misuse was properly before the District Court and the parties at that time; (2) the trial transcript indicates at pages 336-339 that counsel for Robintech, on his cross-examination of Mr. John Morris Bunge, sought to establish its claim that clause 1(d) did constitute patent misuse, whereupon, counsel for Chemidus, on redirect of Mr. Bunge, failed to introduce any evidence which would rebut Robintech's cross-examination; and (3) the trial transcript at pages 236 and ff shows that the trial judge did say that the license agreement spoke for itself and evidence was inadmissible to explain it, but he then apparently admitted the evidence that Chemidus offered, over the objection of Robintech's counsel, so if anyone had an appealable issue, it was Robintech.
 
 
 29
 Chemidus bases its second argument for procedural error on several related points: that its motion to strike was submitted only to show that Robintech had not sustained its burden of proof on the misuse issue; that no one had asked the trial judge to consider this issue as a matter of summary judgment and that when he did so, the trial judge failed to ascertain what material facts were not in controversy under Fed.R.Civ.P. 56.
 
 
 30
 For the following reasons, we disagree with Chemidus on all points.
 
 
 31
 The order of March 22, 1978, does indeed say it treats the motion of defendant as a motion for partial summary judgment. That is at the start of several pages of discussion. It appears to be an inadvertence. The preconditions of Fed.R.Civ.P. 56 had not been met. There is no finding and express direction as Rule 54(b) requires. At the end, the bottom line, all he does is to deny the motion. He says the consideration of appropriate remedies will be deferred until the remaining issues are resolved. That the trial court did not consider it had adjudicated the issue of patent misuse is shown by the fact that it addresses that issue again in its ultimate conclusions of law, 450 F.Supp. at 834, Joint Appendix, Part A at 100. We think the trial judge meant to say that it would be tantamount to a partial judgment if he struck the patent misuse defense, which he did not do. It would not have been possible to do this without making a "law of the case" determination that would have been fatal to the patent misuse contention. Of course this is often true. Interlocutory decisions on motions, or even on the admission or exclusion of evidence, often tell the parties who has won and who has lost, but this does not make them judgments. The trial court simply denied the motion and the question whether it had entered a partial summary judgment would be presented only if the motion had been granted. Under Rule 54(b), the question was not closed and the decision remained subject to revision. Thus Chemidus addresses an imaginary issue.
 
 
 32
 Federal Rules of Civil Procedure, Rule 54(b) reads as follows:
 
 
 33
 Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.
 
 
 34
 III. WHETHER REMOVAL BY CHEMIDUS OF CLAUSE 1(d) PURGES MISUSE.
 
 
 35
 Defendant maintains that patent misuse, if any, has been purged by defendant through the elimination of clause 1(d) from the contract on June 1, 1978. While defendant may be correct in contending that the removal of the offending clause was sufficient in this case to dissipate the misuse, see, e. g., Newburgh Moire Co. v. Superior Moire Co., 237 F.2d 283 (3d Cir. 1956); Sylvania Industrial Corp. v. Visking Corp., 132 F.2d 947 (4th Cir.), cert. denied, 319 U.S. 777, 63 S.Ct. 1033, 87 L.Ed. 1723 (1943), the purging is of no avail to defendant. Defendant's arguments assume a reversal of the District Court's determination of patent invalidity and, thereby, assume the possibility of post-misuse patent royalties. Since we affirm the District Court's determination of patent invalidity, defendant cannot be entitled to patent royalties after the filing of plaintiff's suit for a declaratory judgment. Lear, Inc. v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969); PPG Industries, Inc. v. Westwood Chemical, Inc., 530 F.2d 700 (6th Cir. 1976). Plaintiff filed this suit on April 13, 1976, and the offending clause was not removed until more than two years later on June 1, 1978. The issue of whether the misuse was purged is, therefore, moot.
 
 
 36
 IV. WHETHER THE DISTRICT COURT'S CONCLUSION ON THE MERITS
 
 THAT CLAUSE 1(d) CONSTITUTES PATENT MISUSE IS
 
 37
 CORRECT AS A MATTER OF LAW.
 
 
 38
 In its Memorandum Order of March 22, 1978 (incorporated in part into full opinion of Robintech, Inc. v. Chemidus Wavin, Ltd., supra, at 834-35), the District Court concluded, as a matter of law, that clause 1(d) of the license agreement constitutes patent misuse. The District Court found that the export restriction imposed on Robintech in clause 1(d) represented an attempt by Chemidus to control the distribution of products, i. e., the pipe, not covered by Chemidus' patent, thereby expanding Chemidus' patent monopoly beyond its lawful scope and resulting in patent misuse. The remedy for such misuse, said the District Court, is that the patentee may not use the courts to enforce its rights under the patent until the misuse is purged. Thus, the District Court concluded that this principle mandates denial of Chemidus' counterclaim for royalties for the period January 1, 1970, to June 30, 1975. Robintech, Inc., 450 F.Supp. at 834. It cited United States v. Studiengesellschaft Kohle, M. B. H., 426 F.Supp. 143 (D.D.C.1976) and Ethyl Corp. v. Hercules Power Co., 232 F.Supp. 453 (D.Del.1964). Both cases recognize that it is patent misuse for the holder of a process patent to use license agreements to impose territorial restrictions on sales of unpatented products. They differ in the conclusions that follow: in the earlier case the court attempted to reconstruct the license to effect what the licensor could lawfully have done. The D.C. District Judge rejects this part of the holding as a valid precedent, rightly, we think.
 
 
 39
 The District Court correctly applies the law of patent misuse and the cases it cites support its conclusion. We add, however, a reference to 35 U.S.C. § 271(c) and (d), Act of July 19, 1952, 66 Stat. 811, which appear to permit the owner of a patented method to monopolize and reserve to himself sale of unpatented nonstaple products that are materially, component parts of his patented process. Section 271(c) reads:
 
 
 40
 (c) Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer. (Emphasis supplied.)
 
 Section 271(d) reads:
 
 41
 (d) No patent owner otherwise entitled to relief for infringement or contributory infringement of a patent shall be denied relief or deemed guilty of misuse or illegal extension of the patent right by reason of his having done one or more of the following: (1) derived revenue from acts which if performed by another without his consent would constitute contributory infringement of the patent; (2) licensed or authorized another to perform acts which if performed without his consent would constitute contributory infringement of the patent; (3) sought to enforce his patent rights against infringement or contributory infringement.
 
 
 42
 The interpretation of § 271(c) and (d) is currently before the United States Supreme Court in Rohm and Haas Co. v. Dawson Chemical Co., 599 F.2d 685 (5th Cir. 1979), cert. granted, 444 U.S. 1012, 100 S.Ct. 659, 62 L.Ed.2d 640 (1980). The history of growth of the patent misuse doctrine and corresponding shrinkage of the concept of contributory infringement is stated at length by the Circuit Judge. For a lower court decision, this one is unusual in its implicit, verging on explicit, criticism of the Supreme Court for its apparent preference, in recent years, for the doctrine of patent misuse, over contributory infringement, and the seemingly mushroom growth of the former at the expense, in part, of the latter. The Supreme Court has made quite a record of overturning other patent law precedents which appear to it to have developed into doctrine contrary to the public interest. E. g., Lear, Inc. v. Adkins, supra (estoppel of licensee by his acceptance of license, to contest validity of patent), Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) (doctrine of mutuality in application of collateral estoppel). In both cases, previously respected but wholly judge-made doctrines are left dead and buried. The issue before the Court in Rohm and Haas, however, as stated in the certiorari petition, do not suggest any likely casualty to the doctrine of patent misuse that could influence the decision in this case.
 
 
 43
 In Rohm and Haas, the Fifth Circuit was confronted with the question of whether § 271(c) and (d) allows the holder of a patented process lawfully to restrict the sale of unpatented nonstaple products. "Staple" products mean a commodity or product with substantial uses apart from the patented invention. "Nonstaple" is meant to denote a product or material lacking substantial uses other than infringing uses. See Rohm and Haas, supra at 687, n. 2. In concluding that there was no patent misuse where the holder of a patented process restricts the sale of unpatented, nonstaple products, id. at 703, the Fifth Circuit discussed at length and relied upon the legislative history of § 271. Id. at 698-706. As did the Fifth Circuit, we rely on the remarks made by Giles S. Rich, the chief draftsman of § 271 and since became a judge of the United States Court of Customs and Patent Appeals, to demonstrate that the doctrine of misuse is alive and well when the holder of a patented process attempts to use it to restrict the sale of unpatented, staple products. Judge Rich is well known as one of the nation's leading experts on patent law.
 
 
 44
 In hearings held before Subcommittee No. 3 of the House Committee on the Judiciary, 82d Cong., 2d Sess. (1951) (hereinafter 1951 hearings), Judge Rich makes it abundantly clear that § 271(c) and (d), while allowing the holder of a patented process lawfully to restrict the sales of nonstaple articles, does not allow that same holder to restrict the sales of staple articles. Said Judge Rich:
 
 
 45
 * * * And the one thing we have definitely tried to do is to exclude the people who sell common articles of commerce, staples, things that have nothing to do with the invention * * * . (1951 hearings at 157.)
 
 
 46
 Judge Rich applies this rationale to a specific Supreme Court case, Carbice Corp. of America v. American Patents Development Corp., 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819 (1931). This is a decision by Mr. Justice Brandeis, in his usual succinct yet persuasive manner, now so rarely seen. The Court found patent misuse when the owner of a patent covering cardboard packages attempted to use the patent to secure a limited monopoly of an unpatented material, i. e., dry ice. Judge Rich emphasized that had § 271 been in effect in 1931, the result in Carbice would not have changed. Said Judge Rich:
 
 
 47
 There would be no possibility under this section of utilizing the patent to monopolize the sale of any ice which was a staple article of commerce * * * . It would still be misuse as in the Carbice case, even though this section were enacted. (1951 hearings at 161.)
 
 
 48
 Thus, a review of the legislative history of § 271 clearly demonstrates that Congress was willing for the judge-made doctrine of misuse to retain its efficacy when the holder of a patented process attempts to restrict the sale of unpatented staple articles.
 
 
 49
 In light of the legislative intentions of § 271, the key distinction for our purposes which emerges from this section is the staple-nonstaple distinction. While § 271(c) and (d) will apparently permit a holder of a patented process to restrict the marketing by others of nonstaple products, without patent misuse, the doctrine of patent misuse is recognized by Congress and allowed its full scope where the alleged misuse involves a staple article.
 
 
 50
 In our case the District Court properly concluded that Chemidus' patent was limited to an "apparatus and method" for forming a circumferential internal groove on a length of piping of tubular thermoplastics material. See Joint Appendix, Volume A, Finding of Fact No. 1, page 76. See also United States Letters Patent No. 3,484,900 entitled "Tubing and Piping of Thermoplastics Material," Joint Appendix, Volume A, page 166. The District Court also concluded that the products of the patented method were not themselves covered by the patent. See Joint Appendix, Volume A, Finding of Fact No. 41, page 94; also Memorandum Order of March 22, 1978, Joint Appendix, Volume A, page 67. The products of Chemidus' patented process, i. e., the pipe and pipe fittings, clearly are staple products, commanding a substantial, independent market of their own apart from Chemidus' patented method. As such, under § 271(c) and (d), or rather under their implications, the sale of these products could not be lawfully restricted by Chemidus. If it is improper to restrict the sale of staple unpatented products by tying in with patented ones, a fortiori when, as here, the patented process is neither sold to nor used by the buyer of the unpatented pipes.
 
 
 51
 Thus we affirm the District Court's conclusion of patent misuse.
 
 
 52
 V. WHETHER THE "KNOW-HOW" PROVISION OF CLAUSE 1(b) PURGES MISUSE.
 
 
 53
 Defendant contends, without citation to supporting authority, or giving any persuasive reason, that the promised delivery of "know-how" along with the patent rights under the license agreement somehow differentiates the case from one of pure patent misuse. We affirm the District Court's rejection of this argument, at least as applied to the facts of this case. Of course, the patentee is not abusing the patent laws insofar as he exacts territorial restrictions for use of unpatented know-how, but here the offending clause 1(d) controls the sale of "products" which are defined as thermoplastic piping with "Z" joints which are made by the patented process, if also with unpatented know-how. The use of the patent to effect the desired restriction is inseverable.
 
 
 54
 VI. WHETHER THE CASE MUST BE REMANDED ON THE ISSUE OF
 
 
 55
 COMPLIANCE WITH THE "KNOW-HOW" PROVISIONS.
 
 
 56
 To say that the transfer of "know-how" under a license does not purge patent misuse is not to say that royalties for "know-how" are not enforceable where the "know-how" is licensed in the same agreement as a misused patent. As the District Court correctly stated, "(t)he 'know-how' component of the parties' licensing agreement survives the determination that the underlying patent is invalid, and is segregable from the royalty component thereof." The District Court went on to deny plaintiff's counterclaim for delivery of the "know-how" on the grounds that plaintiff had failed to show that it had paid for that "know-how." In briefing for this appeal, plaintiff claims to have satisfied the condition precedent to "know-how" delivery through payment of the first royalty of $12,000 and defendant claims to have delivered the "know-how." Plaintiff further asserts that trial on its counterclaim was deferred until after trial on the patent validity and enforceability issues. Defendant contends that one-half royalties were due on the "know-how" alone, citing "Amendment II" of the license agreement. Joint Appendix, page 355.
 
 
 57
 The record before us is insufficient to allow a final determination as to the parties' compliance with the "know-how" provisions of the license. It may be that the issue was properly before the District Court and that the court was correct in rejecting plaintiff's counterclaim for failure of proof of plaintiff's own performance. Since the record is too sparse on this matter, we vacate the District Court's denial of plaintiff's counterclaim and remand for further proceedings on the issue of compliance with the "know-how" provisions and the right, if any, of defendant to compensation for "know-how."
 
 
 58
 The decision below is affirmed with the exception noted and the cause is remanded for further proceedings in accordance with this opinion.
 
 
 59
 WALD, Circuit Judge, concurring.
 
 
 60
 I concur fully in the result of this case, and agree that a limited remand is necessary on the issues raised by the parties relating to the "know-how" provisions of their contract. The district court correctly concluded that the Chemidus patent was invalid, eliminating any issue concerning Chemidus's possible purging of its misuse of patent power, as the opinion for the court points out in section III. Furthermore, the terminology and procedure used by the district court in deciding the misuse issue, while possibly susceptible to different interpretations, does not appear to have affected any substantial interests of the parties, and is therefore not grounds for reversal. Rule 61, Fed.R.Civ.P. I also agree that the territorial restrictions imposed under the contract, on the record of this case, constitute patent misuse which justifies the district court's refusal to order Robintech to pay royalties for the period prior to the court's determination that the patent is invalid. I therefore concur in the result reached in the court's opinion, though I am unable to agree fully with parts of its discussion of the issues.
 
 
 
 *
 Judge Leventhal was a member of the panel that heard oral argument in this case, but died while it was under consideration
 
 
 **
 Sitting by designation pursuant to 28 U.S.C. § 293(a)